# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

TAMMY LEE GARIG

CIVIL ACTION

VERSUS

NO. 20-654-JWD-RLB

JEFFERY TRAVIS, ET AL.

## RULING AND ORDER

This matter comes before the Court on five motions to dismiss. The first *Motion to Dimiss [sic] Under FRCP 12(b)(6) for Failure to State a Claim Against Susan L. Guillory, in her Official Capacity as Town Clerk for the Village of Wilson* (Doc. 8) ("*Town MTD*") was filed by Defendant Susan L. Guillory ("Guillory" or "Town Clerk"), in her official capacity as Town Clerk for the Village of Wilson. The second *Motion to Dismiss* (Doc. 12) ("*T&P MTD*") was filed by Defendants Jeffery Travis in his official capacity as Sheriff of East Feliciana Parish, and individually, and former Chief Deputy Greg Phares in his official capacity, and individually (collectively, the "Sheriff Defendants"). The third *Motion to Dismiss* (Doc. 20) ("*Cox MTD*") was filed by Defendant William "Bill" Cox ("Cox"), in both his official and individual capacities. Plaintiff Tammy Lee Garig ("Plaintiff") filed a consolidated opposition to these three motions. (Doc. 32.) The above-named Defendants (sometimes collectively referred to as the "Village Defendants") filed individual replies. (Docs. 35, 36, 37.)

The fourth *Motion to Dismiss Pursuant to Fed. R. Civ. P. Rule 4(m)* (Doc. 22) ("*AG MTD I*") was filed by Defendant Attorney General Jeff Landry (the "Attorney General"). Despite being given an extension of time to respond to this motion (*see* Docs. 22, 31), Plaintiff did not file an opposition. However, the Attorney General filed a reply. (Doc. 34.) The fifth is *Defendant Attorney General Jeff Landry's Rule 12(b)(1) Motion and Rule 12(b)(6) Motions to Dismiss* (Doc. 40) ("*AG*

*MTD II"*), which was also filed by the Attorney General. Plaintiff filed an opposition (Doc. 44), and the Attorney General has not filed a reply.

Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule.

As will be discussed in more detail below, the *Town MTD*, *T&P MTD, Cox MTD,* and the *AG MTD II* are granted because Plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*. The *AG MTD I*, however, is denied.

## I. Relevant Factual Background

### A. Introduction

The following factual allegations are taken from Plaintiff's Complaint ("*Compl.*"), Doc. 1. They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff in this action is Tammy Lee Garig. (*Compl.* ¶ 3, Doc. 1.)

Defendants in this case are: (1) Jeffery Travis, Sheriff of East Feliciana Parish, sued in his individual and official capacity; (2) Greg Phares, former Chief Deputy of East Feliciana Parish, sued in his individual and official capacity; (3) William "Bill" Cox, an Investigator with the Louisiana State Police, sued in his individual and official capacity; (4) Susan L. Guillory, Town Clerk for the Village of Wilson, sued in her official capacity; and (5) Jeff Landry, head of the Louisiana Office of the Attorney General, "who has the duty to investigate the collusion of the public bodies of the State of Louisiana." (*Id.* ¶ 3.) The Attorney General is sued in his official capacity. (*Id.*)

### B. Facts Giving Rise to Suit

Plaintiff begins the operative complaint by declaring that she has "been the subject [sic] collusion of public officials and actors." (*Compl.*, Doc. 1 at 2.)

Plaintiff began her employment with the Village of Wilson Police Department in January 2012, working as a part time police clerk. (*Id.*) Her position later became full time as she assumed additional duties including "bringing [the Mayor and Board of Alderman] up to date on policy and procedures, organizing their ordinances and writ[ing] grants, as well [as] continu[ing] [her] duties in the Police Department." (*Id.* at 3.) She also stepped into the position of Town Clerk in 2016 when the sitting Town Clerk was "displaced in the flood, and abandoned her job." (*Id.* at 4.)

Plaintiff alleges that she found large amounts of money in different areas of the office and that she noted several discrepancies in accounts. (*Id.*) After reviewing files, reports, and deposits, Plaintiff discovered that "a large amount of funds were missing." (*Id.*) She notified the Mayor and the Police Chief, who instructed her to continue obtaining information for an investigation. (*Id.* at 4–5.)

Plaintiff alleges that the town's annual Legislative Audit, which was completed in April of 2017, noted some inconsistencies. (*Id.* at 5.) The CPA verbally reported these inconsistencies to the town council and advised that he had filed a report with the town's insurer in the hopes of recouping some of the alleged missing funds. (*Id.*) Plaintiff further alleges:

> Phares made the decision not to file charges, and did not provide a written report that could be submitted to the towns bond insurance. Phares stated the town had no internal controls. It was shown, in writing, that over 40,000.00 was missing in the time span the previous clerk was employed and gaining a fuel card in her name, making trips out of state to Texas to visit her father.

> Requests were made to have Louisiana State Police and Attorney General's office conduct an investigation, Phares managed to make contact with those agencies advising he would handle it. Yet he still refused our request, regarding a written report.

[sic throughout] (*Id*.)[1]

In November of 2017, Plaintiff avers that she approached Phares with the new audit findings. (*Id*. at 7.) However, he still advised Sheriff Travis that no charges should be brought, despite notification by the Legislative Auditor that funds were missing. (*Id*.) According to the Complaint, Phares made calls to the Attorney General and the Legislative Auditor's office "to stop them from coming to conduct their own investigation." (*Id*.)

In August of 2018, the Village of Wilson entered a contract with LWS Solutions to serve as the Village's accountant. (*Id*.) A Second Legislative Audit for 2016 was also conducted, which noted that there were missing funds and that additional policies were needed. (*Id*. at 7–8.)

Plaintiff alleges that after receiving the Second Audit report, "the Auditor advised the Sheriff of her findings, in hopes he would have his office conduct [an] investigation." (*Id*. at 8.) But again, Phares, acting on Sheriff Travis's behalf, refused. (*Id*.)

In March of 2019, the Village's CPA firm, LWS Solutions, began processing employee payroll. (*Id*.) Plaintiff represents that this change was due to the Town Clerk's continued issues with properly documenting and paying employees. (*Id*.) Despite this change, the Town Clerk still "caused issues with payroll not being correct when received by the CPA." (*Id*.) For example, the Town Clerk continued to keep employee timesheets wherein she documented each employee's absences and daily hours. (*Id*. at 8–9.) Plaintiff alleges that she would then take the payroll sheets to the Mayor for her approval even though Village employees had not seen nor signed the timesheets. (*Id*. at 9.)

---

[1] As the Court discusses in more detail later, the section of the Complaint entitled "Official Statement of Facts," is over 20 pages, and is a poorly written, rambling, first person narrative of events dating back to 2016. In un-numbered paragraphs, Plaintiff, in a diary like fashion, strings together alleged facts, meetings, and notes of events that Plaintiff deems relevant to her claims. This narrative contains numerous grammatical and other language errors too numerous to specifically identify. Some, but by no means all, of these errors have been identified with the designation "*sic*."

In August of 2019, Plaintiff "received an email from [the CPA] and the Town Clerk that there was a problem with [her] leave usage in quick-books, [her] accrued compensatory time had not been entered and [her] regular leave wasn't rolling over, due to [the] Town Clerk failing to report it correctly." (*Id.*) Plaintiff then notified the "CPA, [the] Town Clerk, [the] Mayor and [her] supervisor" that she would submit her own time sheet. (*Id.*)

In September of 2019, Plaintiff was asked by the CPA to review previously submitted timesheets of Village employees. (*Id.*) She allegedly identified that the Town Clerk was not following the policies and procedures for timesheets:

> Town Clerk was only writing the daily hours down, not hours in and out. After the Clerk had the Mayor sign timesheets she took them to the CPA for payroll processing. The Town Clerk failed to issue payroll stubs to employees.
>
> In reviewing the timesheets, I was only looking for the pay period date discrepancies I was not asked nor did I look at employee time or leave usage to verify for correctness. As I came across my time sheets, I submitted missing supporting documents, as well signed my time sheets. I made the mistake of back dating time sheets, which should have had the actual date I signed.

[sic throughout] (*Id.* at 9–10.)

### C. Criminal Charges

#### 1. Investigation

On October 23, 2019, Phares and "another man (Bill Cox)" visited the Mayor. (*Compl.*, Doc. 1 at 11.) Phares asked to see Plaintiff's timesheets because Plaintiff allegedly worked a "movie detail and [did] not tak[e] leave." (*Id.*) The Town Clerk then gave Phares copies of Plaintiff's timesheets, even though "a warrant . . . was not presented." (*Id.*)

On November 8, 2019, Plaintiff received a phone call from Cox, who informed Plaintiff that he was looking at her leave and her work on the movie detail:

> He stated he knew I was in Clinton on a July 24, I ask him how he knew that, stated my phone records indicate I was in Wilson that morning for a period of time then

went to Clinton and back to Wilson (no mention of a warrant). Cox also stated that when he would meet with me he would advise me of my rights. I asked if I needed an attorney he stated that was left up to me, and he would be getting back with me.

[sic throughout] (*Id.* at 12.)

On November 20, 2019, Cox and a detective from the East Feliciana Parish Sheriff's Office met Plaintiff at her office to conduct an interview. (*Id.*) After Cox read Plaintiff her rights, he advised her that she was being investigated for payroll fraud. (*Id.*) Plaintiff disputed the timesheets presented to her. (*Id.* at 12–13.) In essence, Plaintiff alleges that she explained to Cox how the Town Clerk's payroll practices and record-keeping did not accurately reflect her hours for the day of the movie detail. (*Id.* at 13.) Plaintiff alleges that she offered Cox proof that she did not improperly work movie detail but failed to take leave. (*Id.*)

On December 4, 2019, the Mayor called Plaintiff and advised her that Phares and Cox were "probably going to give [her] until Friday to turn [herself] in." (*Id.* at 14.) Plaintiff also alleges that, "[i]t is important to note that Susan, the Town Clerk left the office stated she was going to Clinton, stayed gone for over 3 hours, unusual, therefore she went to meet them Phares and Cox at the jail." [sic throughout] (*Id.* at 14–15.)

### 2. Warrant and Felony Charges

On December 6, 2019, Cox called Plaintiff and advised her to turn herself in by 2:00 p.m. that day. (*Id.* at 15.) Upon arriving at the jail, Plaintiff was given a copy of the warrant signed by Judge Betsy Jones. (*Id.*) Plaintiff alleges that she was "charged with 3 Felonies": public payroll fraud; malfeasance in office; and filing or maintaining false public records. (*Id.* at 15–16.) She subsequently bonded out of jail and was given a court date of January 7, 2020. (*Id.* at 17.)

Plaintiff alleges that the warrant pursuant to which she was charged and arrested had numerous "inconsistencies." (*Id.* at 16–17.) She then details these "inconsistencies" as follows:

1. the warrant states that the complaint was received in October of 2019, when the original complaint was received in August. "This is by Cox's on [sic] admission as well as Warden Kenny Ray Sanders."

2. the warrant states that on October 10, 2019, payroll records were obtained from the Village of Wilson. However, Phares and Cox did not receive payroll records until October 23, 2019. "They were given payroll records without a warrant and were actually looking at August payroll."

3. the warrant states that the affidavit to look at her cell phone records for July 24, 2019, was received on October 25, 2019. However, the complaint involved dates in August of 2019. "If the complaint was for 3 days in August why were they looking at July?"

4. the warrant provides that during her November 20, 2019 meeting with Cox, she admitted to working seven hours on detail, when no admission was made. She asserts that an explanation was given, advising that she never signed a time sheet for the detail or a timesheet for Wilson.

5. the warrant provides that Plaintiff's cell phone was in the Wilson area for a couple of hours that morning, but the warrant failed to mention the hours she spent in Wilson that afternoon.

6. the warrant provides that she admitted to accepting payment for movie detail. Plaintiff alleges that she was shown her signature on the back of a check and a total invoice from the Town of Clinton. "Cox was advised that [Plaintiff] never signed a timesheet or invoice for hours, as [she] wasn't told how much [her] pay per hour was and the check stub did not indicate [the] number of hours worked."

7. the warrant did not have the original signature of Judge Jones, but was electronically signed.

(*Id.*)[2]

### 3. Pretrial Intervention

On January 2, 2020, Plaintiff met with her attorney to discuss her case. (*Id.* at 18.) Plaintiff alleges that she "wanted to prove [her] innocence as [she] had not done anything wrong…. [and]

---

[2] The Complaint also alleges these additional inconsistencies with the warrant:
    1. The warrant states that she had the opportunity to correct a discrepancy, but she did not. Plaintiff alleges that she admitted that she reviewed time sheets at the request of the CPA, only looking at pay period date, not checking employee hours worked or not worked. (*Compl.*, Doc. 1 at 17.)
    2. "Majority of complaints are received through Sheriff's Office, are turned over [to the] Police Department of the Town the compliment [sic] is within or at least consulted with the Chief of that jurisdiction. This had not been done." (*Id.* at 16.)

was not guilty of any of this." (*Id.*) However, because she "could not afford to defend" herself, she decided that a pretrial intervention ("PTI") program was in her "best interest." (*Id.*)

The Complaint contains a description of the terms of the PTI program that Plaintiff entered to resolve the three felony charges lodged against her:

> Once reporting [to sign up for PTI] and receiving my instructions that I was being charged with Misdemeanor Theft, would be on probation until June 30, 2020, reporting to [a PTI program administrator] on a monthly basis. Special instructions were I could not speak about my arrest, the investigating offices or arresting agency. (I was floored, so they can take away my first Amendment Right freedom of speech), and the total cost is $650.00, and given a December 8, 2020 court date.

(*Id*. at 19.)

In a January 7, 2020 letter from her attorney, Plaintiff was "reminded that the criminal charges are still pending and . . . have not been dismissed." (*Id.*) The letter further advised that if Plaintiff were to speak out about the circumstances surrounding her arrest, the district attorney would have the option to invalidate her PTI program and reinstitute the felony charges against her. (*Id.*)

### D. Other Allegations

According to the Complaint, on December 10, 2019, Plaintiff received a letter that was allegedly signed by Guillory informing Plaintiff that she was being placed on administrative leave. (*Compl*., Doc. 1 at 17–18.) On February 28, 2020, Guillory advised the Village's CPA to "freeze" her direct deposit until she returned property that belonged to the Village. (*Id*. at 20.) Plaintiff also received a termination notice, which was "signed by Guillory, without [the] Mayor['s] knowledge." (*Id*. at 21.)

Plaintiff further alleges:

> I have not only been a victim of East Feliciana Chief Criminal Deputy Greg Phares, when he has on 5 different occasions targeted me, but refuse to conduct an investing and or report the theft of over $40,000. I have been a victim of Sheriff Jeff Travis,

as he allowed Phares and Cox to compile documents illegally, knowing I had not committed a crime. But refused to instruct Phares to compile a report of the missing funds that I discovered within the Village of Wilson.

I have also been a victim of Susan Guillory, Village of Wison Town Clerk, where she failed to verify she made a mistake in my payroll, but underhandedly made more than one attempt to discredit my name and reputation. Guillory forged the Mayor's signature with out her knowledge on two different documents terminating my employment, while I was still using accrued leave.

[sic throughout] (*Id.* at 21.)

### E.  Claims and Relief Sought

Count 1 of the Complaint is for civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986.  (*Compl.* ¶¶ 5–13, Doc. 1.)  Plaintiff alleges pursuant to "the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, [s]he is guaranteed the right to petition, the right to be free from unreasonable searches and seizures, the right to due process, the right to property, and the right to due process as an accused." (*Id.* ¶ 7.)  She claims Defendants intentionally and knowingly violated and/or conspired to violate the above constitutional rights while acting under the color of state law. (*Id.*)  Plaintiff further alleges that Defendants "consciously and intentionally intended to violate those rights as retribution for her role in the investigation of the Town of Wilson as set out herein above." (*Id.* ¶ 8.)

As to her § 1986 claim, Plaintiff alleges:

each Defendant, excluding JEFF LANDRY, had knowledge that the wrongs conspired to be done by PHARES and their co-conspirators were about to be committed, and had power to prevent or aid in preventing the commission of the same. Each Defendant, excluding JEFF LANDRY, neglected and/or refused to do so, failing to prevent the wrongful acts complained of herein from being committed. Thus each Defendant, excluding JEFF LANDRY, is liable to the Plaintiff for all damages caused by the wrongful acts complained of herein. Each Defendant, excluding JEFF LANDRY, intentionally failed to exercise reasonable diligence which would have prevented the Plaintiff's damages.

(*Id.* ¶ 13.)

Count 2 is for civil rights violations under Article I of the Louisiana Constitution. (*Id.* ¶¶ 14–17.) Specifically, Plaintiff claims that Defendants violated Sections 2, 3, 4, 5, 6, 7, 9, and 13 of the Louisiana Constitution, "all of which protect Louisiana citizens by guarantying rights to due process of law, individual dignity, property, privacy, freedom from intrusion, freedom of expression, to petition, and rights as an accused." (*Id.* ¶ 15.) This claim parallels Count 1. (*See id.* ¶¶ 5–13.)

Count 3 of the Complaint is for malicious prosecution and abuse of process. (*Id.* ¶¶ 18–19.) Plaintiff alleges that Defendants' conduct caused her to be arrested on misdemeanor charges which had no basis in law. (*Id.* ¶ 19.) "Defendants knew the arrest would be defective on multiple fronts but intentionally proceeded with the arrest in an effort to intimidate, embarrass, and harass the Plaintiff in retaliation for her efforts to investigate [the] Town of Wilson. . . . Defendants intended this result and are liable to Plaintiff for malicious prosecution and abuse of process." (*Id.*) Notably, Plaintiff does not state whether she is bringing these claims under state and/or federal law.

Count 4 is for false imprisonment, wrongful arrest, and wrongful detention. (*Id.* ¶¶ 20–21.) According to the Complaint, Defendants' conduct caused Plaintiff to be "wrongfully arrested, and detained . . . as retribution for [her] efforts." (*Id.* ¶ 20.) Plaintiff again does not state whether she is bringing these claims under state and/or federal law.

Count 5 is for retaliatory arrest in violation of Plaintiff's First Amendment rights. (*Id.* ¶¶ 22–25.) Plaintiff claims that the First Amendment guarantees the "right to Petition the government for redress." (*Id.* ¶ 23.) "Defendants' unlawful conduct as alleged herein was in direct retaliation against the Plaintiff for exercising her First Amendment rights, and was intended to intimidate, embarrass, and harass her as punishment for her exercise of those rights, and thus constitutes a

Retaliatory Arrest." (*Id.* ¶ 24.) Plaintiff specifies that she seeks all damages cognizable under both state and federal law on this claim. (*Id.* ¶ 25.)

Count 6 is for intentional infliction of emotional distress/mental anguish. (*Id.* ¶¶ 26–27.) This Count provides:

> The conduct of Defendants was extreme and outrageous conduct which caused Plaintiff emotional distress intentionally and with the realization to a virtual certainty that mental anguish would occur. The conduct of Defendants described herein was intended to cause Plaintiff to suffer mental anguish and, in fact, Plaintiff did suffer mental anguish. Defendant's conduct was a proximate cause, or, in the alternative a producing cause of Plaintiff's damages.

(*Id.* ¶ 27.)

Count 7 is for negligence under Louisiana Civil Code article 2315, *et. seq.* (*Id.* ¶¶ 28–30.) Plaintiff claims all Defendants "were negligent and/or engaged in intentional, gross, willful, and wanton conduct" and therefore are liable to Plaintiff. (*Id.* ¶ 29.)

Count 8 is for trespass and invasion of privacy. (*Id.* ¶¶ 31–33.) "Defendants at all times knew that they had no legal authority to report allegations of wrongdoing Town of Wilson and attempt to have an investigation of Wilson filings and invade the Plaintiff's privacy nonetheless in furtherance of the scheme of retaliation." (*Id.* ¶ 32.) Again, Plaintiff does not specify whether she is bringing these claims under federal law, state law, or both.

Plaintiff seeks, *inter alia*, general and special damages, punitive damages, attorney's fees, and "any and all general, equitable, revocatory, and declaratory relief to which [s]he is or may be entitled." (*Compl.* ¶¶ 34–46, Doc. 1.)

## II.     Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.*

*City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346–47, 190 L. Ed. 2d 309 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03

(5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Id.* at 503.

## III.    Parties' Arguments

### A.  The Village Defendants Motions to Dismiss

#### 1. Guillory's Original Memorandum (Doc. 8-1)

Guillory first argues that *Heck* bars Plaintiff's claims against her.  Specifically, she argues that Plaintiff's misdemeanor theft charge—which was dismissed following Plaintiff's completion of a pretrial diversionary program—did not terminate in her favor as required by *Heck*. (Doc. 8-1 at 4.)

In support of this proposition, Guillory relies on *Morris v. Mekdessie*, wherein the Fifth Circuit confirmed that participation in a pretrial diversionary program does not terminate a criminal action in favor of the criminal defendant and thus is barred by *Heck*. (*Id*. at 5–6 (citing *Morris v. Mekdessie*, 768 F. App'x 299 (5th Cir. 2019)).)

Guillory notes that the Complaint in this case alleges that Plaintiff entered a PTI program to avoid a trial and potential conviction for three felony charges; challenges the warrant pursuant to which she was arrested; describes the meeting with her attorney wherein she determined that PTI was in her best interest; and describes the terms and conditions of her PTI, including that upon successful completion, she would only be charged with misdemeanor theft. (*Id*. at 6–7 (citing (*Compl*., Doc. 1 at 16–19).)

Based on this, Guillory argues that allowing Plaintiff to pursue her claims after she completed a PTI program would violate *Heck*:

> Allowing [Plaintiff] to assert constitutional claims under Section 1983 related to her being arrested for, charged with, and entering a pretrial diversion program to resolve crimes directly related to the factual allegations that she claims support a Section 1983 claim would violate the rule of *Heck* and its progeny by undermining

the validity of the unfavorable termination of the charges against her. [Plaintiff]'s Section 1983 claims should be dismissed.

(*Id*. at 7.)

Plaintiff's conspiracy claims and state law tort claims are likewise barred by *Heck* because they arise out of the same facts that resulted in her conviction, and the conviction has not been reversed or invalidated. (*Id*. at 7–10.)

Lastly, Plaintiff's § 1983 claims against Guillory in her official capacity fail as a matter of law because she is not a final policymaker nor is she alleged to be. (*Id*. at 16.) Further, "there is not a single fact, or even a conclusory statement that supports a municipal liability claim" because the Complaint does not: (1) identify any policy, custom, or practice of the Village; (2) allege any facts that link a Village policy to any constitutional violation; or (3) explain why or how any policy was the "moving force" behind any alleged constitutional violation. (*Id*. at 16–17.)

## 2. Sheriff Defendants' Original Memorandum (Doc. 12-1)

Preliminarily, Sheriff Defendants attack Plaintiff's Complaint for being a shotgun complaint. (Doc. 12-1 at 14.) Sheriff Defendants note the following pleading deficiencies, which "violate[] the letter of Rule 8 and 10":

> First, the Complaint fails to include numbered paragraphs with each limited to a single set of circumstances in violation of Rule 10(b). For instance, paragraph 4 "Statement of Claims" consists of nineteen pages. Second, Plaintiff fails to allege which of the alleged facts contained in these nineteen pages support which of her numerous causes of action. Third, Plaintiff fails to clearly state which claim is against which defendant. Fourth, it is unclear which claims are brought under federal law and which claims are brought under state law. . . . Plaintiff labels paragraphs 31-33 "Trespass and Invasion of Privacy" [and paragraphs 20-26 as "False Imprisonment, Wrongful Arrest, Wrongful Detention"], without stating whether she is bringing these claims under state and/or federal law.

(*Id*. at 15–16.)

The above deficiencies "make it difficult for Sheriff Defendants to frame their responsive pleadings and determine which facts support which claims or to even determine what claims are being made." (*Id*. at 14–15.) As such, Sheriff Defendants urge the Court to dismiss Plaintiff's Complaint "for this reason alone." (*Id*. at 16.) Sheriff Defendants further contend that, if the Court grants Plaintiff leave to amend, it should order Plaintiff to correct these deficiencies. (*Id*.)

Sheriff Defendants then argue that Plaintiff's claims are barred by *Heck* because (1) a judgment in favor of Plaintiff on her claims would necessarily imply the invalidity of her "conviction" and (2) the three felony charges (for payroll fraud, malfeasance in office, and filing or maintaining false public records) were not terminated in her favor. (*Id*.)

As to their first argument, Sheriff Defendants contend that a ruling in favor of Plaintiff would necessarily imply the invalidity of her "conviction" because all of her claims arise from and relate to her arrest. (*Id*. at 20.) In the Complaint, Plaintiff admits that she was charged pursuant to a warrant; however, she details the "inconsistencies" in the Affidavit for Arrest Warrant that provided probable cause for her arrest. (*Id*. (citing *Compl*., Doc. 1 at 17).) "Since Plaintiff's claims challenge the existence of probable cause," they are in "essence collateral attacks to her criminal judgment's validity." (*Id*.) They continue: "it is irrelevant that Plaintiff was not convicted on every count charged, because since it was determined that there was probable cause for the misdemeanor theft charge, then the arrest was supported by probable cause and *Heck* applies." (*Id*.) Therefore, a ruling in favor of Plaintiff would necessarily imply the invalidity of her "conviction" and sentence, which is impermissible under *Heck*.

Second, Sheriff Defendants argue that *Heck* applies because there has been no favorable termination; that is, Plaintiff's completion of a pretrial diversion program and probation did not terminate the criminal action in her favor. (*Id*. at 21.) Sheriff Defendants reiterate the arguments

made in Guillory's motion—that under Fifth Circuit precedent, including *Morris v. Mekdessie*, "there can be no viable claim for damages where charges are dismissed pursuant to pretrial programs such as pretrial diversion agreements, . . . and pretrial intervention programs, whereas charges are dismissed only after the criminal defendant successfully completes a probationary period." (*Id*. at 20–21.)

In sum, Plaintiff's claims are barred by the *Heck* doctrine because a judgment in favor of Plaintiff would necessarily imply the invalidity of her "conviction" and sentence and the charges were not terminated in Plaintiff's favor. (*Id*. at 21–22.)

Alternatively, Plaintiff's claims should be dismissed because she failed to allege sufficient facts to support her claims against Sheriff Defendants and they are entitled to qualified immunity as to the Section 1983 individual capacity claims.[3] (*Id*. at 22.)

### 3. Cox's Original Memorandum (Doc. 20-1)

Cox seeks dismissal of Plaintiff's Complaint because: (1) all of Plaintiff's claims are barred by *Heck*; (2) he is immune from suit in both his official and individual capacity; and (3) Plaintiff fails to sufficiently state a claim upon which relief may be granted. (Doc. 20-1 at 1–2.)

As to the first ground for dismissal, Cox reiterates many of the arguments made by Guillory and Sheriff Defendants, namely that Plaintiff's claims are barred by *Heck*'s favorable termination requirement. Again, he contends that participation in a pretrial diversionary program equates to a judgment terminating the criminal matter adverse to Plaintiff. (*Id*. at 8.)

He highlights the same allegations that the above Defendants did—that in the Complaint, Plaintiff admits to being charged with three felonies and agreed to enter a PTI program because it was in her "best interest." (*Id*. at 7.) Thus, "[b]y Plaintiff's own admission, she acknowledged

---

[3] *See* Doc. 12-1 at 22–50 for detailed arguments in support of these contentions.

responsibility and accepted a criminal charge; [therefore] the underlying criminal matter was not resolved in her favor." (*Id.*)

Like Sheriff Defendants, he also argues that a ruling in favor of Plaintiff would imply the invalidity of her conviction as her civil claims arise out of and relate to her arrest. (*Id.*) Through this suit, Plaintiff challenges "the existence of probable cause, thereby challenging the criminal judgment's validity," which is "exactly what *Heck* forbids." (*Id.*) *Heck* also bars Plaintiff's state law claims for the same reasons. (*Id.* at 9.)

In conclusion:

> Given Plaintiff's allegations challenging the validity of the criminal charges and the allegations of entering into a pretrial diversion program which is not a resolution of the criminal charges in her favor, it would be a violation of the *Heck* rule and its progeny, as set forth above, to allow Plaintiff to proceed with her claims adverse to Cox. Such claims are *Heck*-barred. Plaintiff's claims should be dismissed with prejudice.

(*Id.* at 9–10.)

Alternatively, Cox argues he is immune from suit in both his official and individual capacities and that Plaintiff fails to state any claims against him.[4] (*Id.* at 10.) Like the Sheriff Defendants, Cox also attacks Plaintiff's Complaint for violating Rules 8 and 10 because it "tasks both the defendants and the Court 'with sorting through an amalgamation of potential claims interwoven in a haphazard fashion.'" (*Id.* at 23–24 (citing *Conway v. Vannoy*, No. 18-33, 2019 WL 1317721, at *3 (M.D. La. Mar. 22, 2019)).) He points out that the Complaint is a "lengthy, rambling, sometimes incoherent narrative attempting to relate events and 'facts' over the course of years." (*Id.* at 23.)

---

[4] *See* Doc. 20-1 at 10–25 for detailed arguments in support of these contentions.

### 4. Plaintiff's Consolidated Opposition (Doc. 32)

In her consolidated opposition, Plaintiff argues that *Heck* does not bar her claims for four reasons. First, she argues that *Heck* employs a summary judgment standard, which is premature at this "point of the litigation" because "there has been no discovery of any kind." (Doc. 32 at 12 ("Clearly standard [sic] used to dismiss claims using *Heck v. Humphrys* [sic] is a summary judgment standard.").)

> The motions brought by the Defendants [] should be denied as the issues raised by the Defendant Wilson and Sherriff's Defendants at this stage of the litigation are not supposed to be adjudicated with the summary judgment standard set out in *Heck*, but *failure to state a cause of action* standard which requires only allegations that could support a cause of action and Plaintiff [] alleged facts and raised issues in her pleadings that require that the motions to dismiss be denied. Because the Defendant Guillory as Village of Wilson Clerk and Sherriff's Defendants requested a review of the four corners of the complaint for damages using a summary judgment standard which is not appropriate at this stage in the litigation, and because Plaintiff has made cognizable claims for damages stemming from the constitutional violations of [her] substantive due process rights[,] the motions to dismiss should be denied.

(*Id*. at 2 (emphasis by Plaintiff).)

Second, Plaintiff rejects Defendants reliance on *Morris v. Mekdessie*, 768 Fed. Appx. 299 (5th Cir. 2019). (*Id*. at 11.) Although Plaintiff acknowledges the Fifth Circuit's holding in that case—that participation in a PTI is not favorable termination of the underlying criminal charge—she argues that it should not be followed by this Court. (*Id*. at 11.) Specifically, Plaintiff contends that because *Morris* was published pursuant to Fifth Circuit Rule 47.5, Defendants' "use of the *Morris* citation is without precedent and should not be considered pursuasive [sic] by this Honorable Court." (*Id*.)

Instead, she urges the Court to follow *Wallace v. Kato*, wherein "the Supreme Court declined to apply the *Heck* rule for deferred accrual." (*Id*. at 12.) Plaintiff explains that the Supreme Court in that case distinguished *Heck* on the grounds that it involved a claim for malicious

prosecution rather than a claim for false imprisonment. (*Id.* at 12–13.) Plaintiff points out that unlike a claim for false arrest, which begins to accrue once an individual is brought before a magistrate, a claim for malicious prosecution is not complete until there has been a conviction and that conviction is overturned; therefore, the statute of limitations for malicious prosecution does not begin to accrue until that time. (*Id.* at 13.) Plaintiff then represents her claims are that (without connecting them to *Wallace* in any way):

> Phares and Cox violated Mrs. Garigs due process rights by investigating claims of fraud by over-reaching the limits of police authority during the investigation of Ms. Garig and then creating an affidavit that intentionally words pertinent date contact with Phares to Cox broadly and misstates dates that payroll records were retrieved so that the violations of due process could not be readily understood . . .

(*Id.*) Plaintiff further alleges that if Cox had included "the true dates of times and events," the Judge would not have found that there was probable cause for the issuance of an arrest warrant because "the misuse of his police investigatory powers would have been open and obvious." (*Id.*)

Third, Plaintiff argues that entering a pretrial intervention program is not a conviction. (*Id.* at 14.) In support of this argument, Plaintiff points out that the PTI program she entered did not require her to acknowledge any of her prior acts. (*Id.* at 15.) Therefore, her case is distinguishable from *Taylor v. Gregg,* which found that "offenders entering PTI must acknowledge responsibility for their actions, but need not admit guilt." (*Id.* (citing *Taylor v. Gregg,* 36 F.3d 453, 455 (5th Cir. 1994)).) She also rejects the "assumption" in *Taylor*—that a person who participates in a PTI is "an offender, i.e. guilty." (*Id.*) "Because there is no offense ever brought to a finding of fact by trial, the use of the word offender is error and the process of entering PTI is not a finding of guilt at all, ever, thus Defendants should be precluded [sic] *Heck* analysis in any stage of the litigation." (*Id.*)

Finally, Plaintiff urges the Court not to apply the *Heck* doctrine to her claims because she was not told that she was giving up her rights to file a civil suit by entering into a PTI program. (*Id*. at 15.)  She argues:

> Defendant wants the Court to assume that Mrs. Garig was an offender, quasi-convicted of a crime by entering into PTI where there is no finding of fact and no waiver of any rights affected by entering into PTI thus, due process concerns should prevent the use of the PTI system as a bar to seeking civil damages against governmental representatives in this case. In this case, the Defendants colluded and abused investigatory authority in violation of due process and then bullied a life long civil servant litigant into acceptin[g] PTI. This acceptance of PTI was a reasonable decision to never have the risk of three felony convictions when weighed against the offer of PTI where there is no jail time, no continued threat of jail and the rights to damages for violations of due process in the overzealous investigation of her particular case were never a part of the criminal settlement.

(*Id*. at 16.)

### 5. The Village Defendants' Replies (Docs. 35, 36, 37)[5]

Defendants first respond that they are not using a summary judgment standard to assert that Plaintiff's claims are barred by *Heck*. (*Town Reply,* Doc. 36 at 2; *T&P Reply,* Doc. 37 at 2.) Rather, Defendants have asserted, pursuant to Rule 12(b)(6), that based on the facts alleged in the Complaint, Plaintiff's claims are barred by *Heck*. (*Town Reply, Id.*; *T&P Reply, Id.*)

Further, Plaintiff does not cite to any jurisprudence to suggest that a *Heck* defense cannot be urged in a motion to dismiss rather than in a motion for summary judgment. (*Town Reply, Id.* at 3; *T&P Reply, Id.*) In fact, in *Heck*, the district court granted the defendants' motion to dismiss, which was affirmed on appeal by the Seventh Circuit Court of Appeals. (*Cox Reply*, Doc. 35 at 5 (citing *Heck v. Humphrey,* 997 F.2d 355 (7th Cir. 1993)); *T&P Reply, Id.* (citing same).) Thus, a motion for summary judgment was neither before the district court, nor was the summary judgment standard applied in the ruling and appeal of *Heck*.  (*Cox Reply, Id.*; *T&P Reply, Id.*)  Additionally,

---

[5] Since Cox, Guillory, and the Sheriff Defendants raise most of the same arguments in their replies, for the sake of judicial economy, the Court will address their *Heck* arguments together and will note when there are any differences, *e.g.* waiver.

Defendants point out that the Fifth Circuit has affirmed dismissals pursuant to motions to dismiss based on *Heck*.

Defendants next argue that, contrary to Plaintiff's contentions, her participation and completion of a PTI program is treated as a "conviction" under *Heck*. (*Cox Reply, Id.* at 6; *Town Reply, Id.* at 4; *T&P Reply, Id.* at 5.) Defendants note that the Fifth Circuit and the Middle, Eastern, and Western Districts have all applied *Heck* to pretrial diversion programs. (*Cox Reply, Id.*; *Town Reply, Id.*; *T&P Reply, Id.* at 3, 5.)

Defendants further reject Plaintiff's argument that *Morris* should not be considered persuasive authority because it is an unpublished decision. (*T&P Reply, Id.* at 3.) They again highlight that there is an overwhelming number of cases that stand for the same proposition as *Morris*—that entering a PTI program does not satisfy *Heck*'s favorable termination requirement. Sheriff Defendants also point out that "while an unpublished opinion issued after January 1, 1996 is not controlling precedent, the court may consider the opinion as persuasive authority." (*T&P Reply, Id.* at 3–4 (citations omitted).) Therefore, this Court can and should consider *Morris* as persuasive authority.

Defendants next contend that Plaintiff's reliance on *Wallace v. Kato*, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) is misplaced. (*Cox Reply, Id.* at 7; *Town Reply, Id.* at 5; *T&P Reply, Id.* at 6.) According to Defendants, the issue in *Wallace* was whether the plaintiff's suit was timely. (*Town Reply, Id.* at 6.) To address that issue, the Court had to determine when the plaintiff's Section 1983 false arrest claim accrued. (*Town Reply, Id.*) The plaintiff argued that *Heck* prevented his claim from accruing until the charges brought against him were dropped. However, the Supreme Court rejected this argument and distinguished *Heck* on the grounds that it involved a conviction,

while *Wallace* involved "an anticipated future conviction." (*Cox Reply, Id.* (citing *Wallace*, 549 U.S. at 384–85).)

*Wallace* has no bearing on this case because the timeliness of Plaintiff's suit is not at issue. (*T&P Reply, Id.*) Further, "[n]either a pretrial diversion program, nor a pretrial intervention program was at issue in *Wallace*. There was no 'middle ground' or conviction terminating the action." (*Cox Reply, Id.*) As such, *Heck* applies and bars Plaintiff's claims.

Defendants then address Plaintiff's arguments that: (1) *Taylor v. Gregg* is distinguishable because (a) she is not an "offender" since there was no finding of guilt by trial and (b) her PTI program did not have a component of acknowledgement; and (2) *Heck* should not apply because she was not told that she was giving up her rights to file a civil suit by entering into a PTI.

As to Plaintiff's first argument: Defendants represent that *Heck* and its progeny do not require a trial and finding of guilt. (*Cox Reply, Id.* at 8.) "Rather, the focus is on whether there was a termination of the criminal action in favor of the criminal defendant, and the caselaw is clear that a 'PTI' does not terminate the action in favor of the criminal defendant, *i.e.*, Plaintiff." (*Cox Reply, Id.* (citing *Taylor*, 36 F.3d at 456).) The Fifth Circuit has held that "proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty." (*T&P Reply, Id.* at 5.)

Additionally, the Fifth Circuit has recognized that entering into a PTI program is an acknowledgement of responsibility for an offender's actions. (*T&P Reply, Id.* at 4.) Sheriff Defendants argue:

> In fact, based upon the PTI Agreement that Plaintiff references in her Complaint and attaches to her opposition, Plaintiff does in fact, acknowledge responsibility for her actions. Plaintiff admits in the Pre-Trial Intervention Agreement that she has "been selected for participation in the Pre-Trial Intervention Program because of my rehabilitative potential and in an effort to divert me from *further* criminal conduct."

(*T&P Reply, Id.* at 4–5.)

As to her second argument: Sheriff Defendants point out that Plaintiff does not cite any facts or law in support. Plaintiff admits that she was represented by counsel in relation to her entering into the PTI. Plaintiff alleges that "[M]eeting with attorney Hesse to discuss my case. During the meeting all options were discussed." (*T&P Reply, Id.* at 5–6.)

Further, the court in *Taylor* held that "[b]y entering [into PTI] agreements, criminal defendants are effectively foregoing their potential malicious prosecution suit in exchange for the conditional dismissal of their criminal charges." (*T&P Reply, Id.* at 5 (citing *Taylor*, 36 F.3d at 456).) Likewise, in this case, Plaintiff's PTI agreement did not result in a determination that she was not guilty, and she has effectively relinquished her right to bring this suit.

Finally, these Defendants argue that Plaintiff has waived some, if not all, claims against them. Specifically, Cox argues his motion to dismiss should be granted as it is unopposed:

> Despite what appears to be Plaintiff's intent to oppose all three motions, her disjointed opposition only addresses Guillory, Travis, and Phares' motions initially, (Doc. 32 at 2 ("should be denied as the issues raised by the Defendant Wilson and Sheriff's Defendants;" "Because the Defendant Guillory as Village of Wilson Clerk and Sherriff's Defendants requested a review ....")), and concludes with only addressing Guillory's motion, (Doc. 32 at 16 (The Defendants Motion to Dismiss Under FRCP 12(B)(6) For Failure To State A Claim Against Susan L. Guillory, In Her Official Capacity As Town Clerk For The Village Of Wilson [Doc. 8] ....)), rendering Cox's motion arguably unopposed. To the extent this Court finds that Plaintiff did not oppose Cox's motion, Cox moves this Court to grant Cox's motion to dismiss.

(*Cox Reply,* Doc. 35 at 2–3.) Plaintiff also does not address Cox's arguments for dismissal based on immunity or failure to state a claim. (*Id.* at 3–4.) As such, Cox avers that Plaintiff has waived any opposition to his motion based on these grounds. (*Id.* at 4.)

Guillory contends: "Plaintiff's opposition completely ignores the argument that the Complaint fails to state a claim of municipal liability under *Monell*." Consequently, Plaintiff has waived her municipal liability claims. (*Town Reply,* Doc. 36 at 1–2.)

Lastly, Sheriff Defendants argue that Plaintiff has waived all, but her conspiracy claims against them. (*T&P Reply,* Doc. 37 at 6.) They represent that in her opposition, Plaintiff does not specifically address the arguments made in their original memorandum and only generally addresses all Defendants' arguments on *Heck*. Plaintiff's opposition concludes by requesting only that Guillory's motion to dismiss be denied. (*Id.* at 7.) Sheriff Defendants continue:

> Sheriff Defendants argued in their memorandum that Plaintiff failed to allege sufficient facts to state a claim against them as to her Section 1983 individual and official capacity claims, Section 1983, Section 1985 and 1986 conspiracy claims, and state law claims. In addition, they argued that they were entitled to QI as to the 1983 claims asserted against them in their individual capacities. Plaintiff has failed to address these arguments, except possibly whether she has stated a 1983 conspiracy claim based upon a violation of substantive due process. Plaintiff's failure to address their arguments on the remaining issues constitutes an abandonment or waiver of these issues.

(*Id.*)

### B. The Attorney General's Motions to Dismiss

#### 1. The Attorney General's First Motion (Doc. 22) & Reply (Doc. 34)

In his first motion, the Attorney General seeks dismissal for failure to timely perfect service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. 22-1 at 1.) Specifically, the Attorney General contends that because service of process was not requested and effectuated within 90 days of the filing of the Complaint as mandated by Rule 4(m), Plaintiff's claims against him should be dismissed without prejudice. (*Id.* at 2.)

In his reply brief, he points out that after his first motion to dismiss was filed, Plaintiff mailed a Summons, Waiver of Service, and a copy of the Complaint to him. (Doc. 34 at 4.)

However, he argues that this does not cure the above procedural defect because Plaintiff failed to demonstrate good cause for her failure to serve. (*Id*.) Therefore, based on Plaintiff's untimely service (134 days after the Complaint was filed) and her failure to demonstrate good cause for this delay, he contends that the Complaint should be dismissed. (*Id*. at 6.)

## 2. The Attorney General's Second Motion (Doc. 40)

In his second motion, the Attorney General "incorporates as if copied herein *in extenso*, the arguments set forth by Defendants" Guillory, Sheriff Defendants, and Cox in their motions to dismiss, including their arguments that *Heck* bars all of Plaintiff's claims and that she failed to state any viable claims. (Doc. 40-1 at 4.) Consequently, Plaintiff's claims against the Attorney General should be dismissed with prejudice. (*Id*.)

Alternatively, the Attorney General seeks dismissal of the Complaint on the grounds that Plaintiff's claims are barred by the Eleventh Amendment. (*Id*. at 5.) He also argues that Plaintiff's claims (both federal and state) are prescribed as a matter of law and should be dismissed with prejudice. (*Id*. at 6.)

## 3. Plaintiff's Opposition (Doc. 44)

In response, Plaintiff first adopts "in toto the arguments of the Opposition to the three other motions to dismiss based on the Heck case." (Doc. 44 at 1.) She then argues that state actions can properly be the subject of § 1983 claims. (*Id*. at 2 (citing *Monroe v. Pape,* 365 U.S. 167 (1961)).) She also rejects the Attorney General's prescription argument:

> In this matter the Defendant then asserts that the actions in 2017 complained of by Mrs. Garig were too long ago to be actionable, however, the acts of the Attorney General form a part of the factual allegations of Mrs. Garig that did not finally culminate into a violation of law until her arrest. While the Plaintiff has asserted that there is a malicious prosecution claim in the actions of all of the Defendants, the action was not a claim that rises to the level of violation of protected rights until there is a compounding of the failings of each of the Defendants culminating with

Defendant Phares claiming that Mrs. Garig had done a criminal act which was made with intent to be malicious.

(*Id*. at 3.)

In conclusion, she contends that the Attorney General's claims, "that this case has no factual basis cannot be found on the factual basis alleged by Mrs. Garig and thus, this attempt to dismiss should be denied." (*Id*.)

## IV. Discussion

### A. Failure to Serve the Attorney General

On October 2, 2020, Plaintiff filed her Complaint against Defendants. (*See Compl.*, Doc. 1.) Waivers of Service were returned and executed on October 5, 2020, for Travis, Phares, and Guillory, and on December 5, 2020 for Cox. (Docs. 4, 5, 6, 15.)

On January 11, 2021, the Attorney General filed his *Motion to Dismiss Pursuant to Fed. R. Civ. P. 4(m)*. (Doc. 22.) On January 13 and 14, 2021, Plaintiff submitted a blank summons for the Attorney General to the Court. (Doc. 24.)  The Court notified Plaintiff that the summons was blank, and she thereafter submitted a new summons (Doc. 26), which was issued by the Court on January 14, 2021 (Doc. 27).  On February 12, 2021, the Attorney General was served with the Complaint. (Doc. 33.)

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). This Rule further provides, however, that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

"[A] district court's dismissal under Rule 4(m) [is reviewed] for abuse of discretion."

*Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008) (citing *Traina v. United States*, 911

F.2d 1155, 1157 (5th Cir. 1990)). The Fifth Circuit has explained:

> Under Rule 4(m), a district court is permitted to dismiss a case without prejudice if a defendant has not been served within [90][6] days after a complaint is filed. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). However, if a plaintiff can establish good cause for failing to serve a defendant, the court must allow additional time for service. *Id.* Moreover, even if good cause is lacking, the court has discretionary power to extend time for service. *Id.* Such relief may be warranted, "for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Fed. R. Civ. P. 4(m) advisory committee's note (1993).

*Id. See also Williams v. Ass'n De Prevoyance Interentreprises*, No. 11-1664, 2013 WL 394026, at

*2 (E.D. La. Jan. 30, 2013) ("While Rule 4(m) permits a district court to dismiss a defendant

without prejudice if not served within [90] days of a complaint, the Fifth Circuit has acknowledged

that this is discretionary. "[E]ven if good cause is lacking, the court has discretionary power to

extend time for service." It is only when good cause exists that a district court *must* extend the time

for service." (citing *Newby*, 284 F. App'x at 149)); *Fetty v. Louisiana State Bd. of Private Sec.*

*Examiners*, --- F. Supp. 3d ----, No. 18-517, 2020 WL 520026, at *7–8 (M.D. La. Jan. 31, 2020)

(deGravelles, J.).

A determination regarding whether a plaintiff has made a sufficient showing of good cause

"is necessarily fact-sensitive" and depends upon the particular circumstances of the case. *Lindsey*

*v. United States R.R. Ret. Bd.*, 101 F.3d 444, 446 (5th Cir. 1996). At a minimum, in order to show

good cause, "the plaintiff must demonstrate at least as much as would be required to show

excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules

usually do not suffice." *Id.* (quoting *Peters v. United States*, 9 F.3d 344, 345 (5th Cir. 1993)).

---

[6] The 2015 advisory committee notes to Rule 4(m) explain that, "[t]he presumptive time for serving a defendant [was] reduced from 120 days to 90 days."

Considering the Attorney General's motion is unopposed, it goes without saying that Plaintiff has failed to make any attempt to demonstrate good cause for her failure to timely serve him.

Nevertheless, the Court will exercise its discretion and decline to dismiss the Attorney General from this suit. Although Plaintiff did not timely request and effectuate service as to the Attorney General, she did eventually serve him on February 12, 2021. (*See* Doc. 33.) The Attorney General has not argued that he has been prejudiced by this delay. Thus, the Court is reluctant to dismiss on such technical grounds. And as will be discussed below, the Attorney General's second motion to dismiss will be granted and Plaintiff's claims will be dismissed as they are barred by *Heck v. Humphrey*. Accordingly, the Court will exercise its discretion to extend the time for service under Rule 4(m) *nunc pro tunc* to the date of service on February 12, 2021.

## B. Shotgun Pleading

### 1. Relevant Law

The Court notes at the outset of its analysis that Plaintiff's Complaint suffers from several distinct pleading deficiencies and fails to meet the requirements of the pleading standards established by Rules 8 and 10 of the Federal Rules of Civil Procedure, tasking both Defendants and the Court with sorting through an amalgamation of potential claims "interwoven in a haphazard fashion." *James v. City of Plaquemine*, No. 18-858, 2019 WL 4452834, at *2 (M.D. La. Sept. 17, 2019) (deGravelles, J.) (citing *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015)) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)).

Rule 8 states that a complaint "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

Additionally, under Rule 10: "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.' " *Weiland*, 792 F.3d at 1320.

In *Weiland*, the Eleventh Circuit identified four types of "shotgun pleadings"—imprecise complaints that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23 (citations omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323.

Thus, in *Weiland*, the Eleventh Circuit reversed the dismissal of a complaint as a "shotgun pleading" because "[t]he allegations of each count [were] not rolled into every successive count on down the line," and, "[m]ore importantly, this [was] not a situation where a failure to more

precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* at 1324. The Eleventh Circuit concluded that "A dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Id.* at 1325 (emphasis in original, citation and quotations omitted).

## 2. Analysis

The Court finds Plaintiff's Complaint falls within the second type of shotgun pleading by "being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. Most counts use language taken directly from the legal elements of causes of action without specifying which facts support the claim.

For example, count 8 of the Complaint is for trespass and invasion of privacy. (*Compl.* ¶¶ 31–33, Doc. 1.) Plaintiff alleges that "Defendants at all times knew that they had no legal authority to report allegations of wrongdoing Town of Wilson and attempt to have an investigation of Wilson filings and invade the Plaintiff's privacy nonetheless in furtherance of the scheme of retaliation." (*Id.* ¶ 32.) "The conduct of Defendants described above was a proximate cause, or, in the alternative a producing cause of Plaintiff's damages." (*Id.* ¶ 33.) As Cox points out in his motion, "Other than the self-made title of her claim, it is utterly unclear what Plaintiff is alleging here. Who trespassed upon what property at what time? . . . Cox finds himself in a position of being entirely unable to cogently respond to this allegation. . ." (Doc. 20-1 at 23.)

Plaintiff also fails to delineate which of her alleged facts support her claims for violations of her Fifth and Sixth Amendment constitutional rights or for violations of Article 1, Sections 4

and 6 of the Louisiana Constitution.[7]  Plaintiff does nothing to clarify this in her oppositions. (*See* Doc. 32; Doc. 44.)

Because Plaintiff failed "to give the defendants notice of the claims against them and the grounds upon which each claim rests," in violation of Rules 8(a)(2) and 10(b), the Court will dismiss these claims without prejudice. *Weiland*, 792 F.3d at 1323.

Moreover, the section of the Complaint entitled "Official Statement of Facts," which spans over 20 pages, is a poorly written, rambling, first person narrative of events dating back to 2016. In un-numbered paragraphs, Plaintiff strings together alleged facts, meetings, and notes of events that Plaintiff seems to deem relevant to her claims. *See Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (affirming dismissal with prejudice of a 403-paragraph shotgun complaint with an 85-paragraph fact section spanning 31 pages, "much of it written in narrative, diary-like form," and many facts of which "were not obviously related to any of Yeyille's claims"). However, much of these paragraphs are filled with immaterialities, including irrelevant phone conversations and her own conclusory accusations. For example, Plaintiff alleges the following under the heading "Refusal to have officers transport Warrant Arrestee July 2016":

> In previous Sheriff's administrations, mutual understanding if an officer came in contact with a wanted subject the officer would contact the agency who had the warrant for the subject so they can transport the subject to jail.
>
> I came in contact with a subject for whom the Judge issued an arrest warrant for Contempt of Court. I contacted the EFSO patrol officer advising him and was told he wasn't going to transport the subject to jail, which was very unusual. Thinking Sheriff Jeff Travis and I were close enough on a personal level I could phone him to see what the issue was. I phoned Travis's office and he put Phares on the phone, who stated "you arrested him you bring him in ",as I began to ask if the previous understanding between departments was no longer going to be used. He became rude and abrupt stating " this issue will be handled this way, and this Sheriffs office is going to operate as we choose, including his officers doing paper work". The

[7] Article 1, Section 4 of the Louisiana Constitution provides rights to own, control, and use, private property.  Article 1, Section 6 of the Louisiana Constitution provides that "[n]o person shall be quartered in any house without the consent of the owner or lawful occupant."

Administration has to date never notified other departments in East Feliciana in writing of this change. in their policy.

[sic throughout] (*Compl*., Doc. 1 at 3–4.) Under the heading "October 19, 2019", she alleges this:

I was instructed by my Chief to go to Clinton and assist them with traffic control durning [sic] the Silliman Homecoming parade. NOTE: this was also the date the family of Christopher Whitfield protested on the Courthouse square. Officer involved shooting of Whitfield.

While working traffic control Phares came through my area twice making direct eye contact with me, as if he were watching me.

(*Compl*., Doc. 1 at 10; *see also*, *id*. at 14, "November 22, 2019" describing a conversation Plaintiff had with the warden at East Feliciana Parish Prison; *id*. at 15–16, "December 6, 2019" describing how her husband took pictures of evidence related to an officer involved shooting while in the detective's office and that "Cox had to ask how to spell the Judges' name."; *id*. at 6, "Natural Death inside Wilson Town limits - July 2016" describing how Phares was "very rudely and loudly interrupting" her; *id*., "Active Shooter Meeting - March 2017" again describing Phares as being very rude and loud when he "stated 'Tammy shut up I can't hear' ".)

Additionally, it is unclear whether she is asserting claims of malicious prosecution and abuse of process, invasion of privacy, false imprisonment, and wrongful arrest and detention under state and/or federal law. The Court will assume that she is asserting claims under both state and federal law.

Plaintiff's Complaint also falls within the fourth type of shotgun pleading because it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. The counts lump all Defendants together and generally state that "Defendants" committed the alleged acts. (*E.g.*, *Compl*. ¶¶ 6–10; ¶¶ 15–17; etc.) Thus, it is "virtually impossible" for any Defendant to know the specific grounds of the claim made against

it or him. *Id.* at 1325.

In sum, Plaintiff's Complaint presents the precise problems the Eleventh Circuit identified as being characteristic of shotgun pleadings, and "is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (citation omitted). By failing to provide corresponding factual support for each separate cause of action, failing to specify what Defendant took what action, and failing to differentiate between the state and federal claims, the Complaint violates the letter and spirit of Rules 8 and 10. Although the Complaint could be dismissed on this ground alone, the Court nevertheless finds that there are more substantive issues with the Complaint that justify its dismissal under Rule 12(b)(6).

### C. *Heck v. Humphrey* bars Plaintiff's claims

Now, turning to the heart of the matter, Defendants argue that Plaintiff's claims are barred by virtue of the Supreme Court's decision in *Heck v. Humphrey*. In response, Plaintiff argues that Defendants' motions should be denied because *Heck* is not properly raised on a motion to dismiss because it employs a summary judgment standard, which is premature at this "point of the litigation." (Doc. 32 at 12 ("Clearly standard [sic] used to dismiss claims using *Heck v. Humphrys* [sic] is a summary judgment standard.").) The Court rejects these arguments for two reasons.

First, it is clear from the face of all the motions in this case that Defendants are not seeking a summary judgment nor are they applying a summary judgment standard to seek dismissal. All Defendants have filed motions to dismiss under Rule 12(b)(6). (*See*, *e.g.* Doc. 8 ("Guillory… move[s] for dismissal under [Rule] 12(b)(6)); *see also* Doc. 12-1 at 19–20; Doc. 20.) Thus, this argument is without merit.

Second, Plaintiff does not cite to any jurisprudence to suggest that a *Heck* defense cannot be brought as a motion to dismiss rather than as a summary judgment motion. In fact, *Heck* itself arose out of a motion to dismiss. The United States District Court for the Southern District of Indiana granted the defendants' motion to dismiss, which was affirmed on appeal by the Seventh Circuit Court of Appeals. *Heck v. Humphrey*, 997 F.2d 355 (7th Cir. 1993).

Further, the Fifth Circuit has affirmed dismissals pursuant to motions to dismiss on the pleadings based on *Heck. See e.g., Price v. City of Bossier,* 841 F. App'x 650 (5th Cir. 2021); *Bonner v. Castloo*, 193 F. App'x 325 (5th Cir. 2006) (per curiam); *Leonard v. Juge,* 72 F. App'x 129 (5th Cir. 2003). And this Court has granted motions to dismiss based on *Heck. See Martin v. Roy*, No. 20-339, 2021 WL 1080933 (M.D. La. Mar. 18, 2021) (deGravelles, J.) (granting motion to dismiss on *Heck*); *Baranco v. Wilson*, No. 16-573, 2018 WL 3076724 (M.D. La. June 21, 2018) (deGravelles, J.) (same); *Jones v. Payne*, No. 16-238, 2016 WL 5660463 (M.D. La. Sept. 28, 2016) (same); *Hamilton v. Damico*, No. 16-178, 2016 WL 316686 (M.D. La. Apr. 27, 2016), *report and recommendation adopted*, No. 16-178, 2016 WL 3197132 (M.D. La. June 6, 2016). Thus, Plaintiff's second argument is likewise without merit.

### 1. Overview of *Heck*

It is well settled that, under *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if the alleged violation arose from the same facts attendant to the charge for which he was convicted, unless he proves "that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87; *Randell v. Johnson,* 227 F.3d 300,

301 (5th Cir. 2000); *Sappington v. Bartee,* 195 F.3d 234, 235 (5th Cir. 1999). "*Heck* requires the district court to consider 'whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.' " *Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir. 1995) (citation omitted). This requirement or limitation has become known as the "favorable termination rule." *Sappington,* 195 F.3d at 235.

The policy undergirding the favorable termination rule is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck,* 512 U.S. at 486. This principle is another manifestation of the doctrine of issue preclusion or collateral estoppel, i.e., the policy of finality that prevents the collateral attack of a criminal conviction once the matter has been litigated. *See id.* at 484–85 ("[The Supreme] Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack." (citations omitted)). The *Heck* Court determined that this principle of collateral estoppel "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 486. If a judgment in the plaintiff's favor would necessarily imply that his conviction is invalid, then the § 1983 action is not cognizable unless the conviction were reversed on direct appeal, expunged, declared invalid, or otherwise called into question in a habeas proceeding. *See id.* at 487; *Hudson v. Hughes,* 98 F.3d 868, 872 (5th Cir. 1996). Therefore, "[t]he maturity of a section 1983 claim . . . depends on 'whether a judgement in [the plaintiff's] favor . . . would necessarily imply the invalidity of his conviction.' " *Hudson,* 98 F.3d at 872 (alteration in original) (citing *Heck,* 512 U.S. at 487).

As a preliminary matter, the Court will address Plaintiff's assertion that her participation in a PTI program does not constitute a conviction and cannot be used to bar her claims. The Court will then consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence." *Heck,* 512 U.S. at 487.

## 2. Favorable Termination

The Fifth Circuit considers voluntary participation in a pretrial diversion program to be a "conviction" for purposes of *Heck*. *See Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 506 (M.D. La. 2013) ("The Fifth Circuit has joined the Third and Second Circuits in treating pretrial intervention programs as convictions under *Heck*."). Moreover, the dismissal of charges after the completion of a pretrial program does not constitute a termination of the criminal proceedings in favor of the plaintiff. *See Evans v. Ball*, 168 F.3d 856, 859 (5th Cir. 1999) ("The rule in this circuit ... is that proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty."), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003).

Several cases illustrate this. For example, in *Morris*, the district court dismissed the plaintiff's claims for false arrest, unlawful seizure, and malicious prosecution, which were based on his arrest and the criminal charges brought against him. *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 870 (2020). The district court found that the plaintiff failed to show that the criminal prosecution had terminated in his favor because he participated in a PTI program. *Id*. at 301–02. Therefore, his claims were barred by *Heck* as there was no favorable termination of the criminal charges against him. *Id*.

The Fifth Circuit affirmed:

Morris completed a pretrial diversion program. A div[er]sion program is essentially a middle ground between conviction and exoneration. *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (explaining the procedure as a 'compromise' because although there is not [a] guilty plea, a diversion imposes burdens on the

defendants 'not consistent with innocence'). Even though it is not a guilty plea, defendants entering diversion programs '*acknowledge responsibility for their actions.*' *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994) *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). As such, '[e]ntering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant....' *Id.* at 456. *Heck* thus applies and dismissal was appropriate under our decades-old rule. *See id.* (citing *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980)).

*Morris*, 768 F. App'x at 301–02 (emphasis added).

In *Elphage*, the plaintiff was charged with resisting an officer, but entered and completed a pretrial intervention program that resulted in the dismissal of the charges. 969 F. Supp. 2d at 507. She then brought a § 1983 claim for wrongful arrest. *Id.* Finding her participation and completion of the pretrial program to qualify under *Heck* as a conviction, the court proceeded to bar the plaintiff's § 1983 claim. *Id.* To allow the plaintiff to assert her civil claim, reasoned the court, "would undermine her participation in, and completion of, the pretrial intervention program" because the plaintiff's "voluntary participation in [the program] with regard to the charge of resisting arrest necessarily implies that [the deputy] conducted a lawful arrest, and therefore, had probable cause for arresting her." *Id.* at 507–08. Furthermore, the *Elphage* court noted that barring the plaintiff's contradictory § 1983 claim served sound public policy—that is, it allows prosecutors to make use of pretrial intervention programs without having to fear criminal defendants returning to the courthouse steps as civil plaintiffs eager to sue. *See id.* at 508 (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)).

Here, Plaintiff's criminal charge for theft was dismissed following her completion of a PTI program. Accordingly, Plaintiff's completion of that program shows that her criminal charge did

not terminate in her favor.[8] Therefore, any claim that questions the validity of those proceedings is barred by *Heck*.

Plaintiff disagrees, arguing that her participation in a PTI program does not constitute a conviction. In doing so, Plaintiff contends that *Morris* does not apply because it is unpublished and therefore not persuasive authority. She instead urges the Court to rely on *Wallace v. Kato*. However, as the Village Defendants correctly point out, this argument overlooks the overwhelming number of cases that stand for the same proposition as *Morris*—that entering a PTI program does not satisfy *Heck*'s favorable termination requirement. *See, e.g., Evans*, 168 F.3d at 859 ("The rule in this circuit . . . is that proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty."); *Gomez v. Gautreaux*, No. 14-169, 2015 WL 4939951, at *2 (M.D. La. Aug. 18, 2015) ("Under *Heck*, courts have held that the plaintiff's voluntary participation and completion of a pretrial diversion program is a conviction."); *Buck v. East Baton Rouge Sheriff's Office*, No. 10-741, 2014 WL 2593852, at *3 (M.D. La. June 10, 2014) (same); *Bates v. McKenna*, No. 11-1395, 2012 WL 3309381, at *4 (W.D. La. Aug. 13, 2012) (explaining that *Heck* "is also applicable to pretrial programs such as pretrial diversion agreements, . . . and pretrial intervention programs, wherein charges are dismissed only after the criminal defendant successfully completes a probationary period."); *Elphage*, 969 F. Supp. 2d at 507; *Escort v. Miles,* No. 17-484, 2018 WL 3580656, at *2 (W.D. La. July 25, 2018).

Additionally, in affirming the district court's dismissal, the *Morris* court relied in part upon "a decades-old-rule" set forth by the Fifth Circuit—that "[e]ntering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant . . ." *Morris,* 768 F. App'x at 301 (citation omitted).

---

[8] Because a non-favorable termination is equivalent to a conviction for purposes of *Heck*, the Court will describe it as a "conviction" rather than the more cumbersome alternatives (*e.g.*, "non-favorable termination").

Further, *Wallace* does not apply to these facts. In *Wallace,* the Court addressed the relationship between the *Heck* bar and when a § 1983 cause of action accrues. *Wallace v. Kato*, 549 U.S. 384 (2007). The Supreme Court held that a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment begins to run at the time the claimant ceased to be detained without legal process. *Id.* at 389–90. The plaintiff in *Wallace* was arrested, tried, and convicted of first-degree murder. *Id.* at 386. On appeal, the court determined that the officers had arrested the plaintiff without probable cause, in violation of the Fourth Amendment, which led to the use of inadmissible statements at his first trial. *Id.* at 387. The appellate court remanded for a new trial. *Id.* The prosecutors dropped the charges about eight months later. *Id.* A year after that, the plaintiff filed a § 1983 suit against the city and several police officers, seeking damages for his unlawful arrest. *Id.*

The plaintiff argued that *Heck* deferred the accrual of his § 1983 cause of action until his conviction was vacated and the charges were dropped, but the Court disagreed: "the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has *not* been . . . invalidated,' that is to say, an 'outstanding criminal judgment.' " *Wallace*, 549 U.S. at 392-93. Notably, *Wallace* involved "an anticipated future conviction." *Id.* at 393; *see McDonough v. Smith*, 139 S. Ct. 2149, 2157, 204 L. Ed. 2d 506 (2019) (noting that some claims fall outside *Heck*'s ambit, like when a conviction is merely "anticipated," (citing *Wallace*, 549 U.S. at 393)). A PTI program was not at issue in that case; there was no "middle ground" or conviction terminating the action. Thus, *Wallace* does not impact the finding that entry into a pretrial diversion program is treated as a conviction under *Heck*.

The Court likewise finds her remaining contentions are without merit. Plaintiff argues that there is no "conviction" because there was no finding of guilt by trial and because she did not have

to accept responsibility for her actions. However, these contentions do not change the legal implications of her voluntary participation in a PTI program, which courts in this circuit have unanimously found to be equivalent to a conviction under *Heck. See e.g., Elphage*, 969 F. Supp. 2d at 506; *Bates v. McKenna*, 2012 WL 3309381, at *4–5 (W.D. La. Aug. 13, 2012).

Plaintiff also asserts that the Court should not apply the *Heck* doctrine to her claims because she was not told that she was giving up her rights to file a civil suit by entering a PTI program. She further asserts that Defendants "bullied" her into accepting PTI. Notably, Plaintiff does not cite to any facts or law to support these arguments. Further, in the Complaint, Plaintiff alleges that she was represented by counsel in relation to her entering into the PTI program. She states that she chose to do so because she thought it was in her best interest. (*Compl.*, Doc. 1 at 18, "[M]eeting with attorney Hesse to discuss my case. [During] the meeting all options were discussed . . .") Plaintiff's PTI Agreement, on which Plaintiff's signature twice appears, also provides: "I have made this election voluntarily and of my [own] free will. I have not been forced to participate in this program by threats or by any form of coercion."[9] (Doc. 32-3 at 1.) As such, the Court finds Plaintiff's arguments to be unpersuasive.

In sum, Plaintiff's participation in a PTI program constitutes a conviction under *Heck*. Because the conviction has not been reversed on direct appeal, expunged, declared invalid or otherwise called into question in a habeas proceeding, Plaintiff's § 1983 claims may proceed only

---

[9] Consideration of the PTI agreement is proper because it is referenced in Plaintiff's Complaint and attached to her opposition. On a motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' " *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross and Blue Shield of Georgia, Inc*., 892 F.3d 719, 726 (5th Cir. June 12, 2018) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)) (citations and internal quotation marks omitted)). The Fifth Circuit has approved district courts' consideration of documents attached to a motion to dismiss, when such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *See Werner v. Dept. of Homeland Sec.*, 441 F. App'x 246, 248 (5th Cir. 2011); *Scanlan v. Texas A&M Univ*., 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

if the Court determines that a judgment in her favor will not necessarily call into question the validity of her conviction. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007).

### 3. Whether Plaintiff's Claims Necessarily Imply the Invalidity of her Conviction

#### a. Federal Law Claims[10]

In this case, a successful § 1983 suit would "necessarily imply the invalidity of [Plaintiff's] conviction or sentence." *Cano v. Bexar Cty., Texas*, 280 F. App'x 404, 408 (5th Cir. 2008). All of the charges for which Plaintiff was arrested arose from the same underlying conduct. Although the Complaint lists eight causes of action, the gravamen of the Section 1983 claims is wrongdoing by Defendants in connection with the allegedly unlawful procurement of Plaintiff's arrest and criminal conviction in state court. Because Plaintiff through this proceeding challenges the probable cause for her arrest and ultimately her conviction, her claims are barred by *Heck*.

#### i. Due Process Claims

First, Plaintiff's § 1983 claims premised on Fourth Amendment or "Due Process" violations are barred by *Heck* because, if true, they would necessarily imply the invalidity of her conviction or sentence. To prevail on an unlawful search or seizure claim, Plaintiff must show that there was no probable cause. *See Haggerty v. Texas Southern University*, 391 F.3d 653, 655–56 (5th Cir. 2004). Plaintiff alleges that the warrant pursuant to which she was arrested was not supported by probable cause because Cox provided false or misleading information in order to obtain the warrant. Plaintiff alleges that a conspiracy by Defendants tainted the investigation and led to the malicious and wrongful initiation of criminal charges in connection with her timekeeping

---

[10] Again, the Complaint does not specify whether Plaintiff's malicious prosecution, abuse of process, false imprisonment, wrongful arrest/detention, and invasion of privacy claims are brought under federal and/or state law so the Court will address them under both.

practices. Plaintiff seeks to attack the legitimacy of the investigation and the veracity of Defendants' actions.

As such, a finding that the warrant and Affidavit on which it was based were tainted and proof of a conspiracy would necessarily imply the invalidity of her conviction for misdemeanor theft. *See Castellano v. Fragozo*, 352 F.3d 939, 959–60 (5th Cir. 2003) ("The heart of Castellano's claim is that the prosecution obtained his arrest and conviction by use of manufactured evidence and perjured testimony, actions attributable to it because Fragozo acted under color of state law. Castellano's proof directly implicated the validity of his conviction and therefore he could not proceed and limitations could not accrue consistent with the principles of *Heck* . . ."); *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (stating that if the arrestee "is convicted and evidence is presented by the prosecution at his criminal trial which is a *direct or indirect* product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck*") (emphasis added); *see also Wilbon v. Louisiana,* No. 10-4281, 2010 WL 5598336, at *4 (E.D. La. Nov. 22, 2010), *report and recommendation adopted*, No. 10-4281, 2011 WL 162131 (E.D. La. Jan. 13, 2011) ("*Heck* likewise bars a related illegal search and seizure claim.") (citing *Johnson v. Bradford,* 72 F. App'x 98, 99 (5th Cir. 2003) and *Hall v. Lorenz,* No. 02-50312, 2002 WL 31049457 (5th Cir. 2002) (holding that *Heck* barred the plaintiff's illegal arrest and illegal search and seizure claims because, if successful, they would undermine the validity of the plaintiff's conviction)).

### ii. False Imprisonment[11], False Arrest, Malicious Prosecution, and Abuse of Process Claims

Likewise, Plaintiff's malicious prosecution[12], abuse of process, false arrest, and false imprisonment claims are barred by *Heck*. These claims rest on an alleged violation of the Fourth Amendment (*i.e.*, that she was unconstitutionally seized and arrested due to lack of probable cause); they require a showing of no probable cause—just like the *Heck*-barred claims discussed above. *See Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 584 (5th Cir. 2012) (per curiam) ("Allowing Cormier to proceed with his false-arrest and malicious-prosecution claims against the officers under § 1983, then, risks 'undermining the validity of his criminal conviction[ ]' because the same underlying events triggered those charges." (citation omitted)); *Cano*, 280 F. App'x at 408 ("Cano's conduct that gave rise to probable cause to arrest is also the conduct that forms the basis of his conviction. Therefore, because a judgment in favor of Cano would necessarily imply the invalidity of his assault conviction, *Heck* bars this claim."); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (holding that *Heck* bars recovery for false arrest, when there is probable cause for any of the charges made and plaintiff's "proof to establish his false arrest claim, i.e., that there was no probable cause to arrest . . . would demonstrate the invalidity of [plaintiff's] conviction); *Brown v. Lyford,* 243 F.3d 185, 189 (5th Cir. 2001) ("The 'constitutional torts' of

---

[11] Plaintiff alleges a "false detention" claim as well, but the Court treats it the same as her false imprisonment claim for purposes of the *Heck* analysis. Both claims require proving a lack of the requisite quantum of suspicion (*i.e.*, reasonable suspicion or probable cause).

[12] The Fifth Circuit has concluded that no "freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). Similarly, there is no freestanding claim for abuse of process under Section 1983. Like malicious prosecution, "the common law tort of misuse of legal procedure, without more, does not rise to the level of constitutional wrong remedied by Section 1983." *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir. 1989) (citing *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1188 n.1 (5th Cir. 1978)). Regardless, Plaintiff's claims are, like false arrest claims, predicated on the absence of probable cause. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) ("Common-law malicious prosecution requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause."); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).

false arrest . . . and false imprisonment . . . require a showing of no probable cause."); *Shaw v. Harris,* 116 F. App'x 499, 500 (5th Cir. 2004) (finding that claims of perjury and false affidavits would necessarily imply that plaintiff's conviction was invalid, and therefore, barred by *Heck*).

### iii. *First Amendment Retaliatory Arrest Claim*

In count 5 of the Complaint, Plaintiff alleges a First Amendment retaliatory arrest claim. The allegations Plaintiff supplies in support of this claim appear in vague terms that accompany legal conclusions. For example, the Complaint provides: "Defendants' unlawful conduct as alleged herein was in direct retaliation against the Plaintiff for exercising her First Amendment rights, and was intended to intimidate, embarrass, and harass her as punishment for her exercise of those rights, and thus constitutes a Retaliatory Arrest." (*Compl.* ¶ 24, Doc. 1.) However, Plaintiff never specifies what the "unlawful conduct as alleged herein" is. (*See id.* ¶¶ 22–25.) Presumably, this claim is based on her allegations that Defendants brought criminal charges against her in retaliation for her role in the investigation of missing funds in the Town of Wilson.

Consequently, this claim is also precluded by *Heck*. To prevail on a First Amendment retaliation claim, a plaintiff must generally plead and prove the absence of probable cause for her arrest. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) ("Absent [a lack of probable cause], a retaliatory arrest claim fails."); *Magee v. Reed*, No. 14-1554, 2021 WL 411449, at *5 (E.D. La. Feb. 5, 2021); *McLin v. Ard*, 866 F.3d 682, 696 n.9 (5th Cir. 2017) (requiring First Amendment retaliation plaintiffs to "prove the common-law elements of malicious prosecution," including a finding of no probable cause for the arrest (quoting *Keenan v. Tejeda*, 290 F.3d 252, 260 (5th Cir. 2002))).

#### iv.    *Invasion of Privacy Claim*

Similarly, Plaintiff's invasion of privacy claim is barred by *Heck*.  Plaintiff asserts in support of this claim: "Defendants at all times knew that they had no legal authority to report allegations of wrongdoing [sic] Town of Wilson and attempt to have an investigation of Wilson filings and invade the Plaintiff's privacy nonetheless in furtherance of the scheme of retaliation." (*Compl.* ¶ 32, Doc. 1.)  Although it is unclear, it appears that Plaintiff is asserting an invasion of privacy claim based upon the allegation that the State and the East Feliciana Sheriff's Office investigated her for theft in office related to her work in the Town of Wilson. Again, this investigation resulted in Plaintiff being charged with three felonies: public payroll fraud; malfeasance in office; and filing or maintaining false public records.

Accordingly, any claim for invasion of privacy is barred by *Heck* for the reasons stated above; to prevail on this claim, Plaintiff would need to show that the charges against her were not supported by probable cause. *See Hemphill v. Haglund,* 45 F. App'x 519, 520 (6th Cir. 2002) (invasion of privacy action against arresting police officer necessarily implied invalidity of plaintiff's conviction); *Johnson v. Anhorn,* 334 F. Supp. 2d 802, 807–08 (E.D. Pa. 2004) ("Courts have found invasion of privacy claims to necessarily imply the invalidity of convictions."); *Housley v. United States,* 156 F.3d 1237 (9th Cir. 1998) (prisoner's invasion of privacy claim against agents of Department of Justice, alleging that the agents used illegal electronic surveillance devices during their investigation of him, would necessarily implicate his underlying conviction); *Dill v. Village of Gowanda,* 952 F. Supp. 989, 994 (W.D.N.Y. 1997) (claims of false arrest, false imprisonment, invasion of privacy and malicious prosecution necessarily implied the invalidity of a conviction because the claims presumed that defendant police officers stopped plaintiffs without probable cause and that the charge of driving without a license was therefore invalid.).

###### *v.* *Conspiracy Claims*

In addition to the claims barred above, Plaintiff alleges that Defendants engaged in a conspiracy to violate her civil rights under 42 U.S.C. §§ 1983, 1985, and 1986. The Complaint recounts a conspiracy that focuses largely on the claims surrounding her arrest, including a conspiracy to falsify evidence and maliciously prosecute Plaintiff out of a motivation to suppress her constitutional rights.

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.' " *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018).

Here, since all of Plaintiff's other claims are barred by *Heck*, she has not plausibly alleged a deprivation of her constitutional rights. "No deprivation, no § 1983 conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019); *Curtis v. Sowell*, 761 F. App'x 302, 306 n.3 (5th Cir. 2019) ("Because Curtis's federal conspiracy claim cannot stand without an underlying constitutional violation, it fails as well."); *Moore v. Grant*, 79 F. App'x 676, 677 (5th Cir. 2003). Even if she had, her § 1983 conspiracy claims would be barred by *Heck* because they challenge her conviction. *Lawson v. Speetjens,* 42 F.3d 642 (5th Cir. 1994) ("Lawson's complaint also alleges that Fortner and investigator Davis violated Lawson's rights by conspiring to incarcerate him. If proved, these conspiracy claims would also call his conviction into question."); *North v.*

*Jones*, No. 11-0865, 2012 WL 3044279, at *2 (M.D. La. July 12, 2012), *report and recommendation adopted*, No. 11-865, 2012 WL 3044273 (M.D. La. July 25, 2012) (finding the plaintiff's conspiracy claim was barred unless and until the plaintiff could show his conviction was invalidated because "if successful, [it] would disclose constitutional deficiencies in the pertinent criminal conviction(s)[.]").

Plaintiff also invokes the provisions of 42 U.S.C. § 1985 and § 1986. These statutes apply, however, only in situations where there is a discriminatory motive, which Plaintiff has not alleged. *Villegas v. Galloway,* 458 F. App'x 334, 338 (5th Cir. 2012) (citing *Jenkins v. Methodist Hospitals of Dallas, Inc.,* 478 F.3d 255, 260–61 (5th Cir.), *cert. denied,* 522 U.S. 825, 128 S. Ct. 181, 169 L. Ed. 2d 35 (2007)). Accordingly, these claims are dismissed.

### b. State Law Claims

Plaintiff asserts a host of state law tort claims that stem from her arrest, including malicious prosecution, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, and invasion of privacy. She also asserts a retaliatory arrest claim and claims for violations of the Louisiana Constitution. These constitutional claims mirror her federal constitutional claims. (*Compare Compl*. ¶¶ 5–13, Doc. 1 *with* ¶¶ 14–17.) Defendants argue that pursuant to *Heck*, all state law claims must be dismissed. (Doc. 8-1 at 8; Doc. 12-1 at 19; Doc. 20-1 at 9; Doc. 40-1 at 4.) The Court agrees.

The *Heck* doctrine has been applied to bar state law tort claims. *See Lowell v. Ard*, No. 17-187, 2019 WL 4855150, at *3 (M.D. La. Oct. 1, 2019); *Anderson v. City of Minden*, No. 07-905, 2009 WL 1374122, at *5–6 (W.D. La. May 15, 2009) (citing *Roberson v. Town of Pollock*, 915 So. 2d 426, 433–34 (La. App. 3d Cir. 2005)). Again, *Heck* held that a civil tort action is not an appropriate vehicle for challenging the validity of outstanding criminal judgments. *Heck*, 512 U.S.

at 486. Since Plaintiff's state law claims arise out of the same facts that resulted in her conviction, and the conviction has not been reversed or invalidated, Plaintiff's state law claims against Defendants are barred by *Heck. Lowell,* 2019 WL 4855150, at *3; *Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021).

### D. Waiver

Further, most of Plaintiff's claims are subject to dismissal for an additional reason— waiver. In her opposition to the Village Defendants' motions, Plaintiff failed to respond to Guillory's argument about *Monell* liability and Sheriff Defendants' arguments on failure to state a claim and qualified immunity. (*See* Doc. 32.) She also failed to oppose Cox's motion in whole. (*Id.*)

"The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes

waiver."); *JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that, "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases' " and holding that, because appellant "fail[ed] to do either with regard to its underlying claims, . . . those claims [were] inadequately briefed and therefore waived.").

"By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Consequently, because Plaintiff failed to meaningfully oppose Defendants' motions on these claims, the Court will grant Defendants' motions on those issues on the grounds of waiver. *See JMCB*, 336 F. Supp. 3d at 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also Wuestenhoefer*, 105 F. Supp. 3d at 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).

## V.    Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, although Plaintiff has not requested leave to amend to cure any deficiencies, the Court will act in accordance with the "wise judicial practice" and general rule and grant Plaintiff leave. *JMCB*, 336 F. Supp. 3d at 642; *see also Fetty v. Louisiana State Bd. of Private Sec. Examiners*, --- F. Supp. 3d ----, No. 18-517, 2020 WL 520026, at *15 (M.D. La. Jan. 31, 2020)

(deGravelles, J.) (citing *JMCB*, 336 F. Supp. 3d at 641–42)); *Murphy v. Bos. Sci. Corp.*, No. 18-31, 2018 WL 6046178, at *1 (M.D. La. Nov. 19, 2018) (deGravelles, J.) (reaching same result) (citing, *inter alia*, *JMCB*).

Failure to cure the deficiencies will likely result in the dismissal of Plaintiff's case from this Court. Specifically, if Plaintiff fails to cure the deficiencies in her § 1983 claims, they will be dismissed with prejudice. Further, if all of Plaintiff's § 1983 claims are dismissed, the Court will, in all likelihood, decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Enochs v. Lampasas Cty.*, 641 F.3d 155, 159–61 (5th Cir. 2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (collecting cases)); *Pullins v. Hancock Whitney Bank*, No. 19-00006, 2021 WL 96246, at *12 (M.D. La. Jan. 11, 2021) (Dick, C.J.) (declining to exercise supplemental jurisdiction over state law intentional infliction of emotional distress claim after federal claims were dismissed).

In closing, the Court reminds Plaintiff of her Rule 11 obligations, particularly in light of the numerous pleading deficiencies detailed above. Specifically, Plaintiff should have a good faith basis in law and fact for any claims she makes. Fed. R. Civ. P. 11(b)(2), (3). While the Court has no reason to doubt Plaintiff's adherence to this rule, the Court issues this reminder as a precaution.

## VI. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dimiss [sic] Under FRCP 12(b)(6) for Failure to State a Claim Against Susan L. Guillory, in her Official Capacity as Town Clerk for the Village of Wilson* (Doc. 8) filed by Defendant Susan L. Guillory, in her official capacity as Town Clerk for the Village of Wilson, is **GRANTED**.

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 12) filed by Defendants Jeffery Travis in his official capacity as Sheriff of East Feliciana Parish, and individually, and former Chief Deputy Greg Phares in his official capacity, and individually is **GRANTED**.

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 20) filed by Defendant William "Bill" Cox, in both his official and individual capacities is **GRANTED**.

**IT IS ORDERED** that the *Motion to Dismiss Pursuant to Fed. R. Civ. P. Rule 4(m)* (Doc. 22) filed by Defendant Attorney General Jeff Landry is **DENIED**.

**IT IS ORDERED** that the *Defendant Attorney General Jeff Landry's Rule 12(b)(1) Motion and Rule 12(b)(6) Motions to Dismiss* (Doc. 40) filed by the Attorney General is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall be given twenty-eight (28) days in which to amend the complaint to cure the deficiencies. Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on June 30, 2021.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**